Daniel F. McMahon, J.
The trial of the defendant was interrupted to conduct a Wade hearing after a witness identified the defendant, following his refusal to do so at the first trial. The court granted defendant’s motion to interrupt the trial because of the unusual circumstances and in the interest of justice. The District Attorney had not served any notice under CPL 710.30.
The defendant was being retried for kidnapping, first degree, and three counts of robbery, first degree. During the testimony of a witness, Harold Waldron, he pointed to the defendant as one of the kidnappers who had held the victim for approximately 36 hours in his apartment in New York City. The witness testified at the first trial in December, 1976 at which time he refused to make any identification and the responses of Waldron and the record indicated he was declining out of fear.
The defendant claimed surprise and moved for a mistrial on the ground the testimony was inadmissible as the District Attorney had not served a notice as required under CPL 710.30. The court denied the motion for a mistrial and also the motion to strike the testimony of the witness.
After the court expressed the view that a Wade hearing would be appropriate the defense reluctantly but unequivocally requested the hearing. The defense counsel also stated he would participate. The matter was put over for a day. The Wade hearing was held as scheduled on May 26, 1977. Before *623 commencing, defense counsel again moved for a mistrial and in the alternative to have the identification testimony of Waldron stricken. Both motions were denied. Defense counsel then sought to withdraw his request for the Wade hearing. This was denied. The defense attorney also, at this point, refused to participate in the hearing, reversing his previously stated position, on the ground that to do so might jeopardize his rights on appeal of the court’s refusal to grant his motion for a mistrial. At this point, the jury had been excused and the District Attorney had his witnesses present. The court directed the hearing to proceed. The defendant and counsel attended but did not participate.
In his trial cross-examination of witness Waldron, the defense counsel elicited from him that he had been shown photos of defendant on September 4, 1974 at the 48th Precinct and had identified him, except by an incorrect nickname ("Bo” instead of "Clyde”). Although the testimony of the prior photo identification of defendant was inconsistent with other trial testimony, the court nevertheless ruled this issue had to be examined more closely at a hearing to determine if there was a prior photo identification of defendant and, if so, whether it was in any way "unduly suggestive”.
The second issue to be determined by the hearing is whether the District Attorney has sufficient information of the identification testimony that would have required notice to the defense under CPL 710.30 (subd 1, par [b]).
The defendant and four other defendants had originally been charged with numerous crimes arising from the abduction of one James "Sonny” Williams from the Soul Record Shop in White Plains on September 20, 1974. Two defendants were tried on the first trial — Frank James Hunter and defendant Carroll. During the first trial, Hunter suffered a heart attack and the case was severed as to him. He died shortly thereafter. The trial continued as to defendant but the jury was unable to agree as to his guilt on the kidnapping and robbery counts.
James "Sonny” Williams was taken to a basement apartment at 2749 8th Avenue and held there with another victim, Louis Hayes, for about 36 hours. Hayes was allegedly tortured and murdered by the perpetrators. His body was found in The Bronx where a prosecution for his murder followed. Those charged in the Westchester indictment were also charged with Hayes’ murder in Bronx County. Parallel investigations were *624 conducted by the Westchester and Bronx authorities with some co-operation on issues of mutual interest.
At the Wade hearing, the District Attorney called three witnesses: New York City Detective George Scroope, White Plains Detective Donald Shamley and Waldron. Detectives Scroope and Shamley testified that on September 4, 1974 Waldron was arrested for the crimes at 2749 8th Avenue. Charges against him were subsequently dismissed on the ground that his apartment was being used by the perpetrators against his will. On the day of his arrest, Waldron was questioned at the 48th Precinct by several detectives, including Scroope and Shamley. He was shown photos of the homicide victim, Hayes, and two or three of the perpetrators other than defendant Carroll. Detectives Scroope and Shamley testified, and the court accepts, that the defendant Carroll was not a suspect at that time. He did not become a suspect until September 25, 1974 at which time his photo was provided by the F.B.I. to Detective Shamley in White Plains. The court accepts this to be the fact. Hence, witness Waldron’s testimony concerning his observation of defendant Carroll’s photo on September 4, 1974 was in error as other trial testimony also indicated. No other photos of any defendants were shown to Waldron at any other time. The court concludes that no photo of defendant Carroll was shown to Waldron, precluding any possible claim of violation with the defendant’s constitutional rights.
The court also notes Waldron’s trial testimony indicated he observed defendant in his apartment on two occasions, each for approximately 30 minutes, which would satisfy an "independent source” finding by the court that the witness had ample opportunity to justify the in-court identification he has made.
The remaining issue is whether, under all the facts, the District Attorney had the obligation to give notice under CPL 710.30 (subd 1, par [b]) of the identification testimony of Waldron. The District Attorney acknowledged in his statement to the court that Waldron, shortly after his refusal to identify defendant at the first trial, stated that he believed defendant was one of the perpetrators but out of fear he would persist in his refusal to make an in-court identification. At the Wade hearing, Waldron testified he was specific in telling the District Attorney he recognized defendant to be one of the kidnappers, but he confirmed his refusal to so state *625 in court. The court accepts Waldron’s testimony on these issues. CPL 710.30 (subd 1) reads as follows: "Whenever the people intend to offer at a trial * * * testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identifíed him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.” (Emphasis supplied.) This section further provides (subd 2) that the notice be timely served (concededly not complied with here) but permits the court to allow a late service "for good cause”. The court may permit a motion to suppress during trial where a pretrial notice under CPL 710.30 was not served by the People (CPL 710.40, subd 2). The People contend that CPL 710.30 does not apply for the following reasons:
(1) They had no knowledge that Mr. Waldron might, in fact, change his mind and make an in-court identification of defendant until the day of his actual testimony on May 24, 1977.
(2) The previous identification of defendant was made during a judicial proceeding — the actual trial of the indictment— and during his participation as a witness therein.
(3) The People had no notice of any photographic identification of defendant Carroll — and in fact Mr. Waldron was mistaken on this point that there was no such identification.
The District Attorney further argued that the legislative intent of this section is to prevent "surprise” to a defendant and to provide a procedural path for a judicial determination as to any possible constitutional violation of any of defendant’s rights; that the transcript of Mr. Waldron’s testimony at the prior trial should have alerted defense counsel to the possibility, if not probability, that he did recognize defendant Carroll but was afraid to make any identification in the courtroom. The District Attorney argued further that he would be prejudiced if required to serve a notice pursuant to CPL 710.30, as he could not represent in any notice that he had a witness (Waldron) who would identify defendant at the trial.
The language of the statute is explicit: if the District Attorney has a witness who will identify a defendant, then he must provide notice. The court concludes on the testimony heard, that the District Attorney did not know, with any degree of certainty, that Waldron would identify defendant until he did *626 so at the second trial. Under these facts the District Attorney was not under a statutory obligation to give notice.
The court rejects defense counsel’s contention of "surprise” by Waldron’s testimony. He had the transcript of the previous trial which he used extensively for cross-examination of witnesses. At the first trial, Waldron was asked the following question and gave the following answer: "Q. Now, do you recall the faces and descriptions of any of the persons who were walking in and out of your apartment back in August, 1974? A. I’d rather not say.” This was followed by a direction from the court to the witness that he must answer the question or in the alternative plead the Fifth Amendment. The District Attorney then asked the following question: "Well, Mr. Waldron, are you afraid?” A sidebar conference was immediately called by the court following which the prosecutor withdrew the question. There was no further inquiry of Mr. Waldron concerning identification.
Accordingly, under all the circumstances herein, the court finds that the District Attorney did not violate CPL 710.30, and that there was no deprivation of any of defendant’s constitutional rights nor prejudice to defendant; that the testimony of Mr. Waldron before the jury on May 24, 1977 was properly elicited, may be considered by the jury with all of the other evidence of the case, and that the motion for a mistrial and/or a suppression is in all respects denied.